



# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

# FELONY

## SUPERSEDING BILL OF INFORMATION
## FOR CONSPIRACY TO SMUGGLE TURTLES

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 14-181** |
| **v.** | * | **SECTION: "C"** |
| **HON KIT LAU** | * | **VIOLATIONS: 18 U.S.C. § 371** |
| a/k/a JOHN LAU | | 18 U.S.C. § 554 |
| a/k/a DAVE LNU | * | 16 U.S.C. § 3372(d) |
| **LAWRENCE TREIGLE** | | 16 U.S.C. § 3373(d)(3)(A) |
| * | * | * |

The United States Attorney charges that:

## COUNT 1
### (Conspiracy to Violate the Smuggling Laws and the Lacey Act,
### All in Violation of Title 18, United States Code, Section 371)

A.   <u>AT ALL TIMES MATERIAL HEREIN:</u>

   **I.   Conspirators**

   1.   **HON KIT LAU, a/k/a JOHN LAU, a/k/a DAVE LNU**, was a Great Britain national residing in Hong Kong.  **HON KIT LAU, a/k/a JOHN LAU, a/k/a DAVE LNU**, engaged in wildlife trafficking activity by selling, purchasing, transporting, exporting, importing, and

facilitating the purchase, transport, exportation, and importation of wildlife, including shipments transported in interstate and foreign commerce.

2.      **LAWRENCE TREIGLE** was engaged in the business of purchasing, selling, and transporting wildlife.  Some of the wildlife trafficked by **LAWRENCE TREIGLE** had been, or was intended to be, exported and transported in interstate or foreign commerce.

3.      J.T. (a/k/a, J.R.) was engaged in the business of capturing wildlife from its natural habitat and selling and transporting such wildlife.  Some of the wildlife trafficked by J.T. had been, or was intended to be, exported and transported in interstate or foreign commerce.

4.      S.Y.C. (a/k/a, A.W.) was a Hong Kong national who resided at various times in California and Hong Kong.  S.Y.C. engaged in wildlife trafficking activity by assisting **LAWRENCE TREIGLE** and others with the purchase, sale, transport, and export of wildlife, including shipments transported in interstate and foreign commerce.

5.      S.F.C. (a/k/a, K.L.) was a Hong Kong national who resided at various times in California and Hong Kong.  S.F.C. engaged in wildlife trafficking activity by assisting **LAWRENCE TREIGLE** and others with the purchase, sale, transport, and export of wildlife, including shipments transported in interstate and foreign commerce.

6.      H.Y.B.W. (a/k/a, B.W., a/k/a H.M., a/k/a T.L.) is a Hong Kong national who resides in Hong Kong.   H.Y.B.W. engaged in wildlife trafficking activity by selling, purchasing, transporting, exporting, importing, and facilitating the purchase, transport, exportation and importation of wildlife, including shipments transported in interstate and foreign commerce.

2

## II.     Legal Framework

7.      The Lacey Act, 16 U.S.C. §§ 3371-3378, is a key legislative tool that United States authorities utilize to combat illegal wildlife trafficking.  Among other things, the Lacey Act makes it unlawful for a person to knowingly "make or submit any false record, account, or label for, or any false identification of, any fish, wildlife, or plant which has been, or is intended to be (1) imported, exported, transported, sold, or received from any foreign country; or (2) transported in interstate or foreign commerce." 16 U.S.C. § 3372(d).

8.      The United States and Hong Kong, together with approximately 176 other countries, are signatories to a multilateral treaty called the Convention on International Trade in Endangered Species of Wild Fauna and Flora, 27 U.S.T. 1087, T.I.A.S. 8249 (commonly referred to as "CITES" or the "Convention").  CITES provides a mechanism for regulating international trade in species whose continued survival is considered threatened by trade.  By agreement of the parties, species are listed on "appendices," based on the level of protection necessary to protect the species.  International trade in species listed on the appendices is monitored and regulated by permits and quotas.  The permit restrictions apply to live and dead specimens, as well as skins, parts and products made in whole or in part from a listed species.

9.      Wildlife species in danger of extinction and which are, or may be, affected by trade (for example: tigers, pandas, elephants and all species of sea turtles) are listed on Appendix I of CITES.  CITES allows very limited trade in Appendix I species for scientific and research purposes, and only if a valid "foreign export permit" issued by the specimen's country of origin (or a valid "foreign re-export certificate" issued by the country of re-export), as well as a valid "import permit" from the destination country, are obtained prior to shipping any such wildlife

3

from one country to another. International trade in Appendix I species for "primarily commercial purposes" is prohibited.

10. Species listed on Appendix II of CITES may become threatened with extinction unless trade is strictly regulated. Appendix II species are those for which trade is subject to strict regulation and is only authorized in particularized circumstances. One such requirement is that the exporting country must issue a foreign export permit (or valid foreign re-export permit) after being advised that (a) "such export will not be detrimental to the survival of that species," (b) "the specimen was not obtained in contravention of the laws of [the exporting Country] for the protection of fauna and flora;" and (c) "any living specimen will be so prepared and shipped as to minimize the risk of injury, damage to health or cruel treatment." CITES, Article IV.

11. Since June 11, 1992, the North American Wood turtle (*Glyptemys Insculpta)* has been listed on Appendix II of CITES.

12. CITES is implemented in the United States by the Endangered Species Act of 1973 (ESA), which directs the U.S. Fish and Wildlife Service (USFWS) to administer the treaty. 16 U.S.C. §§ 1537a, 1540(f). The ESA states that "[i]t is unlawful for any person . . . to engage in any trade in any specimens contrary to the provisions of [CITES], or to possess any specimens traded contrary to the provisions of [CITES]." 16 U.S.C. §§ 1538(c)(1), 1540(b)(1). The requirements of CITES are also implemented through federal regulations, which require a CITES import permit, export permit or re-export certificate prior to the importation or exportation of any CITES protected wildlife. 50 CFR §§ 23.13, 23.20, 23.35, 23.36, 23.37.

13. In addition to the requirements of CITES and the ESA, federal law generally requires that persons exporting wildlife from, or importing wildlife to, the United States,

complete and sign a Declaration for Importation or Exportation of Fish or Wildlife (Form 3-177) prior to the importation or exportation of any wildlife. 50 CFR §§ 14.61, 14.63. Among other information, the form must list the CITES permit number authorizing the exportation of any CITES-protected species. Additionally, all exported wildlife must be made available for inspection by USFWS officers at least 48 hours prior to export. 50 CFR §§ 14.52, 14.54(f). The clearance and inspection requirements imposed by these regulations include presentation of any applicable CITES permits. Finally, individuals and businesses that import or export wildlife for commercial purposes must obtain a license from USFWS prior to importing or exporting wildlife. 50 CFR § 14.91.

B.     THE CONSPIRACY:

14.    Beginning on a date unknown, but no later than November 1, 2011, and continuing until on or about August 19, 2014, in the Eastern District of Louisiana and elsewhere, defendants **HON KIT LAU, a/k/a JOHN LAU, a/k/a DAVE LNU, LAWRENCE TREIGLE,** and other persons both known and unknown to the United States Attorney, did knowingly conspire, combine, confederate, and agree among themselves to:

a.     fraudulently and knowingly export and send from the United States, or attempt to export and send from the United States, any merchandise, article, or object, namely protected turtles, contrary to any law or regulation of the United States, namely CITES, as implemented by the ESA, 16 U.S.C. § 1538(c)(1), and 50 C.F.R. § 23.13, and  declaration, clearance, licensing and inspection requirements governing exportations of wildlife, as imposed by 50 C.F.R. §§ 14.52, 14.54(f), 14.63, and 14.91, or to receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment, or sale of such merchandise, article, or object, namely protected

turtles, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States, namely CITES, as implemented by the ESA, 16 U.S.C. § 1538(c)(1), and 50 C.F.R. § 23.13, and declaration, clearance, licensing and inspection requirements governing exportations of wildlife, as imposed by 50 C.F.R. §§ 14.52, 14.54(f), 14.63, and 14.91, all in violation of Title 18, United States Code, Section 554; and

b.      knowingly make and submit and cause to be made and submitted false records and labels for, and false identifications of, wildlife, namely turtles, that had been, or were intended to be imported, exported, transported, sold, purchased or received from a foreign country, or transported in interstate and foreign commerce, in violation of Title 16, United States Code, Sections 3372(d) and 3373(d)(3)(A). The offense involved the sale or purchase, offer of sale or purchase, or commission of an act with intent to sell or purchase wildlife with a market value greater than $350.

C.      MANNER AND MEANS OF THE CONSPIRACY:

15.      **HON KIT LAU, a/k/a JOHN LAU, a/k/a DAVE LNU, LAWRENCE TREIGLE,** and their co-conspirators, through the actions of themselves and others acting under their direction, used the following means and acted in the following manner, among others, to effect the conspiracy:

a.      It was part of the conspiracy that the defendants and their co-conspirators used private e-mail communications transmitted between themselves and others to purchase and sell turtles, to include sending and receiving digital photographs depicting the specimens;

b.      It was a further part of the conspiracy that the defendants and their co-conspirators prepared and submitted, or caused others to prepare and submit, falsified shipping

6

labels and falsely identified package contents on disclosure forms in an effort to deceive postal officials, wildlife inspectors, and customs authorities;

      c.     It was a further part of the conspiracy that the defendants and their co-conspirators employed a scheme in which turtles were initially transshipped through intrastate or interstate commerce to an intermediary who then completed the transaction by facilitating the export to foreign purchasers;

      d.     It was a further part of the conspiracy that the defendants and their co-conspirators failed to obtain an import/export license as required by the USFWS before exporting wildlife;

      e.     It was a further part of the conspiracy that the defendants and their co-conspirators failed to complete the *Declaration for Importation or Exportation of Fish or Wildlife (Form 3-177)* prior to the exportation of turtles;

      f.     It was a further part of the conspiracy that the defendants and their co-conspirators failed to notify the USFWS of a pending exportation, and make the shipment available for inspection, at least forty-eight (48) hours prior to the estimated time of exportation;

      g.     It was a further part of the conspiracy that the defendants and their co-conspirators failed to obtain clearance from the USFWS for wildlife shipments exported from the United States;

      h.     It was a further part of the conspiracy that the defendants and their co-conspirators failed to obtain and present to government authorities documentation required by CITES prior to engaging in international trafficking of CITES-protected species;

i.      It was a further part of the conspiracy that the defendants and their co-conspirators used wire transfers of money and shipments of cash or money orders to finance the purchase and sale transactions involving protected species of turtles.

D.      OVERT ACTS:

16.     In furtherance of the conspiracy and in order to achieve the objectives thereof, **HON KIT LAU, a/k/a JOHN LAU, a/k/a DAVE LNU, LAWRENCE TREIGLE**, and their co-conspirators, both known and unknown, on or about the dates specified below, committed, or caused to be committed, the following transactions and associated activities, which are representative examples of overt acts in the Eastern District of Louisiana (LA) and elsewhere:

a.      Beginning on a date unknown, but no later than November 1, 2011, and continuing until on or about August 19, 2014, **HON KIT LAU, a/k/a JOHN LAU, a/k/a DAVE LNU, LAWRENCE TREIGLE**, and their co-conspirators used e-mail communications and phone text communications to negotiate the purchase and sale of North American Wood Turtles that were illegally captured from the wild by a known co-conspirator in Pennsylvania (PA).

b.      Beginning on a date unknown, but no later than November 1, 2011, and continuing until on or about August 19, 2014, **HON KIT LAU, a/k/a JOHN LAU, a/k/a DAVE LNU** and co-conspirators sent money from Hong Kong to **LAWRENCE TREIGLE** in the Eastern District of Louisiana, via bank transfer and PayPal, as payment for North American Wood turtles.

c.      Beginning on a date unknown, but no later than November 1, 2011, and continuing until on or about August 19, 2014, a known co-conspirator in PA captured North American Wood turtles from the wild and transshipped the illegally captured North American

8

Wood turtles in interstate commerce from post offices in PA to **LAWRENCE TREIGLE** in LA. The mailing labels on these shipments used false names and addresses and failed to declare that the shipments contained turtles.

      d.      Beginning on a date unknown, but no later than November 1, 2011, and continuing until on or about August 19, 2014, **LAWRENCE TREIGLE** transshipped cash and money orders in interstate commerce from post offices in LA to a known co-conspirator in PA as payment for North American Wood turtles that were illegally captured from the wild.

      e.      Beginning on a date unknown, but no later than November 1, 2011, and continuing until on or about August 19, 2014, **LAWRENCE TREIGLE** repackaged the North American Wood turtles he received from a known co-conspirator in PA and transshipped them in interstate commerce from post offices in LA to known co-conspirators in California (CA) for eventual export to known **HON KIT LAU, a/k/a JOHN LAU, a/k/a DAVE LNU** and other co-conspirators in Hong Kong.  The mailing labels on these shipments used false names and addresses and failed to declare that the shipments contained turtles.

      f.      Beginning on a date unknown, but no later than November 1, 2011, and continuing until on or about August 19, 2014, known co-conspirators in CA received the North American Wood turtles sent by **LAWRENCE TREIGLE** and smuggled them in foreign commerce from post offices in CA to **HON KIT LAU, a/k/a JOHN LAU, a/k/a DAVE LNU** and other co-conspirators in Hong Kong.  On the shipping box labels, the known co-conspirators in CA falsely declared the turtles as other items including story books, shoes, magazines, dresses, and legos.

g.      Beginning on a date unknown, but no later than November 1, 2011, and continuing until on or about August 19, 2014, **HON KIT LAU, a/k/a JOHN LAU, a/k/a DAVE LNU** and other co-conspirators in Hong Kong received the North American Wood turtles that were smuggled from CA.

All in violation of Title 18, United States Code, Section 371.

## NOTICE OF FORFEITURE

1.      The allegations of Count 1 of this Bill of Information are re-alleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 554, made applicable through Title 28, United States Code, Section 2461(c).

2.      As a result of the offense alleged in Count 1, defendants **HON KIT LAU, a/k/a JOHN LAU, a/k/a DAVE LNU** and **LAWRENCE TREIGLE** shall forfeit to the United Sates pursuant to Title 18, United Sates Code, Section 981(a)(1)(C), made applicable through Title 28, United States Code, Section 2461(c), any and all property, real or personal, which constitutes or is derived from proceeds traceable to violations of Title 18, United States Code, Section 554.

3.      If any of the property subject to forfeiture, as a result of any act of omission of the defendant:

       a.   cannot be located upon the exercise of due diligence;

       b.   has been transferred or sold to, or deposited with, a third person;

       c.   has been placed beyond the jurisdiction of the Court;

       d.   has been substantially diminished in value; or

10

    e.  has been commingled with other property which cannot
         be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of said defendant up to the value of the above forfeitable

property.

All in violation of Title 18, United States Code, Sections 554 and 981(a)(1)(C), made applicable

through Title 28, United States Code, Section 2461(c).


                              KENNETH ALLEN POLITE, JR.
                              UNITED STATES ATTORNEY



                              DAVID HALLER
                              Assistant United States Attorney


New Orleans, Louisiana
November 13, 2014

11

No. 14-181 "C"

# United States District Court

## FOR THE

EASTERN ___ DISTRICT OF ___ LOUISIANA

UNITED STATES OF AMERICA

vs.

HON KIT LAU
a/k/a John Lau, a/k/a Dave LNU
LAWRENCE TREIGLE

SUPERSEDING BILL OF INFORAMTION FOR
CONSPIRACY TO TO SMUGGLE TURTLES

Violation(s):   18 USC § 371
18 USC § 554
16 USC § 3372(d)
16 USC § 3373(d)(3)(A)

Filed _____, 20 14

_____, Clerk.

By _____, Deputy.

DAVID HALLER
Assistant United States Attorney