UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA,   CASE NO. 2:14-CR-00181-HGB-SS

   Plaintiff,

vs.

HON KIT LAU,

   Defendant.
_____/

## DEFENDANT'S SUPPLEMENTAL SENTENCING MEMORANDUM

The Defendant, HON KIT LAU, by and through undersigned counsel, and pursuant to Local Rule 32.1.2, files this Supplemental Sentencing Memorandum:

Mr. Lau continues to acknowledge and accept responsibility for the serious nature of his offense conduct. However, in addition to the reasons addressed in Mr. Lau's original Sentencing Memorandum, the reasons listed below support the Court imposing a sentence which does not include Mr. Lau serving an additional period of incarceration. A sentence which includes sanctions other than an additional period incarceration is sufficient but not greater than necessary to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

Mr. Lau's conduct is less serious than the conduct of his co-defendant, Lawrence Treigle. The Final Presentence Investigation Report (PSR) indicates that Mr. Lau was involved in the turtle trade from November 2011 to August 2014. (PSR ¶ 5). The majority of Mr. Lau's conduct occurred in 2014. (PSR ¶ 28-35).

On the other hand, Lawrence Treigle had been involved in the turtle trade since 2004. According to the Presentence Report, Mr. Treigle was targeted in an illegal

interstate commerce scheme selling and bartering illegally-captured North American Wood Turtles from 2004-2005. (PSR ¶ 13).

During the 2004-2005 investigation, law enforcement officers executed a search warrant on the residence of John Tokosh, the main target of the investigation. During the search, a computer was seized. Emails between Mr. Tokosh and Mr. Treigle revealed that Mr. Treigle had knowledge that the turtle bartering scheme was illegal. The investigation revealed that Mr. Tokosh was capturing North American Wood turtles from the wild, and that Mr. Treigle was brokering the sales of the captured turtles. During the 2004-2005 investigation, law enforcement officers were preparing an application for a search warrant of Mr. Treigle's residence. However, Hurricane Katrina made landfall in the New Orleans, Louisiana area before the warrant was finalized. (PSR ¶ 13).

No legal action was taken against Mr. Treigle as a result of the 2004-2005 investigation. However, Mr. Tokosh was convicted of Lacey Act violations in Pennsylvania in June 2006. As a result of the conviction, Mr. Tokosh was sentenced to serve 1 year and 1 day in prison. (PSR ¶ 13). Law enforcement began investigating Mr. Treigle as a suspect again in 2011. (PSR ¶ 14).

Mr. Lau's offense conduct is less serious than the conduct of Mr. Treigle because he was involved in the turtle bartering market for less time than Mr. Treigle. Mr. Treigle's involvement in the illegal turtle trade dates back to 2004. Mr. Lau's earliest involvement began in 2011. Mr. Treigle also played a more prominent role in the operation. Mr. Treigle was responsible for brokering the illegal transactions. Mr. Treigle coordinated the capture and shipment of the turtles between the buyers and sellers. Without Mr. Treigle's coordination, it is likely that the turtle trading scheme would not have been as successful.

Mr. Lau's role in the operation was not as significant as Mr. Treigle's role, as Mr. Lau was only a buyer. The difference in their respective roles supports this Court imposing a less serious sanction on Mr. Lau.

Additionally, Mr. Tokosh, who was responsible for the illegal capture of North American Wood turtles between 2004-2005, was sentenced to 1 year and 1 day in prison. Mr. Lau's conduct is also less serious than the conduct of Mr. Tokosh. Without the capture of wild turtles, the illegal turtle trade would not be possible. If Mr. Tokosh had not captured the North American Wood Turtles from the Pennsylvania wild, no turtle trading scheme could have been implemented. The difference in the conduct of Mr. Lau and Mr. Tokosh also supports this Court imposing a less serious sanction on Mr. Lau than the sentence imposed on Mr. Tokosh. Mr. Lau acknowledges that Mr. Tokosh's conduct was discovered as a result of a separate investigation and sentenced by another court completely separate from this matter.

According to the Presentence Report, there is no information to suggest that Mr. Lau harmed or posed any significant danger to the turtles. (PSR ¶ 98). In fact, Mr. Lau bred these turtles in captivity to propagate the species. Mr. Lau also bred the North American Wood Turtles in order to trade them for other endangered species of turtles. Mr. Lau traded for these other species in order to breed them and to prevent the potential extinction of the species. Mr. Lau is passionate about the conservation of the world's wildlife. Mr. Lau has spoken at international seminars on the breeding of freshwater turtles.

As noted in the attachments to his original Sentencing Memorandum, Mr. Lau has also dedicated substantial financial resources to philanthropy. Mr. Lau has sponsored ten orphaned children through World Vision. World Vision is a Christian humanitarian

organization which battles poverty throughout the world. Mr. Lau is also a donor to the Hong Kong PHAB (Physically Handicapped and Able-Bodied) Association. PHAB is a program that empowers social integration of people with and without disabilities. Mr. Lau has also made substantial donations to the Hong Kong Red Cross. Mr. Lau has donated to the general fund of the Hong Kong Red Cross, as well as specifically to the Thailand Flood of 2011, and the Japan Earthquake of 2011. Mr. Lau has also supported the Hong Kong Salvation Army. Mr. Lau has advised undersigned counsel that he will be making a financial donation to the World Wide Fund for Nature (WWF). Proof of that contribution will be provided to the Court prior to or at the sentencing hearing in this case.

Finally, Mr. Lau is facing unique collateral consequences as a result of his conduct in this case. Beyond the punishment of this Court, Mr. Lau is going to be faced with removal or deportation back to Hong Kong and will likely be unable to travel to the United States in the future. Mr. Lau is currently in a foreign country separated from the majority of his family. Mr. Lau is a father of two, one child being a newborn. Mr. Lau has already served over 90 days of pretrial incarceration, before the posting of a $250,000 cash bond. (PSR at p.2 - Release Status). Since being released, Mr. Lau has been under pretrial supervision and has complied with all the terms of that supervision.

For the reasons in both this Supplemental Memorandum and Mr. Lau's original Sentencing Memorandum, including Mr. Lau's personal history and characteristics, and because Mr. Lau poses no risk to the community, this Court should impose a sentence which does not include any additional period of incarceration. Under these circumstances, a federal felony conviction, which will ultimately result in Mr. Lau's removal from and future preclusion from the United States, a substantial fine, and period of probation, supervised

release, or home detention is reasonable. Such a sentence is sufficient but not greater than necessary to satisfy the sentencing goals described in § 3553(a)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 29, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to Assistant United States Attorney David Haller, david.haller@usdoj.gov.

s/ Michael J. Snure
MICHAEL J. SNURE
Florida Bar No. 36325

s/ William R. Ponall
WILLIAM R. PONALL
Florida Bar No. 421634

SNURE & PONALL, P.A.
425 West New England Avenue
Suite 200
Winter Park, FL 32789
Telephone: (407) 469-6200
Facsimile: (407) 645-0805

Attorneys for the Defendant